FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2020 MAR 19 AM 10: 35

CLERK C. Robinson
S. DIST. OF GA.

# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

ROBBIE DOTSON,

Plaintiff,

v.

DISH NETWORK L.L.C.,

Defendant.

2:19—CV—21

## ORDER

Before the Court is Defendant Dish Network L.L.C.'s ("Dish") Motion for Summary Judgment. Dkt. No. 49. This Motion has been fully briefed and is ripe for review. For the following reasons, Dish's Motion is **GRANTED**.

## BACKGROUND

Defendant Dish is an entity that provides broadcast satellite television products and services to residential and commercial customers. Dkt. No. 49-1 ¶ 2. Plaintiff Robbie Dotson is a former Dish customer who alleges that beginning sometime in 2014, Dish used an automatic telephone dialing device or equipment to make a series of unauthorized telephone calls to his cellular telephone in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (the "TCPA"). Dish denies that it made many of the

calls alleged by Dotson and contends that the calls it did make were authorized under the TCPA.

On or around July 2012, Dotson authorized Dish to install equipment at his home in Brunswick, Georgia so that Dish could provide him with broadcast television service. See Dkt. No. 49-2 at 6-9; see also Dkt. No. 49-6. Dish alleges that pursuant to the installation, Dotson signed a "Digital Home Advantage Plan Agreement" (the "Plan Agreement") dated July 10, 2012 wherein he agreed to a two-year term of services, paid monthly. Dkt. No. 49-6. Contained in the agreement is Dotson's name, signature, phone number, email address, and home address. Id. at 2. Though Dotson admits that he gave Dish his cell phone number, he denies that the signature on the agreement is his. Dkt. No. 49-2 at 6-9.

Dotson contends that he ultimately discontinued his services with Dish because the services were not working and because Dish refused to resolve the problem. Dkt. No. 49-2 at 12. On December 13, 2013, he signed a "Service Agreement" whereby he agreed to have Dish remove equipment from his home. Id. at 10-11; see also Dkt. No. 49-5. Dotson admits that he signed the Service Agreement, which also contains his cell number and home address. Id.

Dotson alleges that in 2014 Dish began to make calls to the cell phone number listed in the Plan Agreement and Service Agreement. Dkt. No. 49-at 11. Dotson recalls exceedingly little about these calls, such as the date the calls were made or the

number from which they were dialed. Id. at 11-12. However, he does recall being told that he owed the remaining balance on the Plan Agreement, to which he responded that Dish "broke the contract because [they] wouldn't fix what [they] put in." Id. at 13. After Dish continued to insist that he pay the outstanding balance, Dotson would hang up the phone. Id. Dotson alleges that he told Dish employees to stop calling him "[s]oon after" he had started receiving calls, but that the calls persisted. Dkt. No. 51-2 at 1. Eventually, Dotson's attorney, acting on Dotson's behalf, sent a letter to Dish dated January 26, 2015 demanding, inter alia, that Dish stop making calls to Dotson. See Dkt. No. 49-9. Nevertheless, Dotson alleges that the calls continued into 2016 and perhaps as late as early 2017. Id. at 14.

Dish contends that from 2012 to 2015, it made exactly eighteen calls to Dotson's cell number, including three in 2012, nine in 2014, and one in 2015. Dkt. No. 49-1 ¶ 10. In support, Dish appended to its motion an "outbound telephone call log" depicting the date, time, and nature of each of these calls. Dkt. No. 49-8. According to an affidavit by Joey Montano, Dish's Business Operations Manager, this call log shows "all outbound telephone activity . . . related to Mr. Dotson's account." Dkt. No. 49-3. Consistent with the call log, Dish contends that it did not make any calls to Dotson after January 23, 2015. Dkt. No. 49-1 ¶ 13; see also Dkt. No. 49-8. Dish further contends that it did not receive anything

from Dotson revoking his consent to receive calls from Dish prior to his attorney's January 2015 letter. See Dkt. No. 49-1 ¶¶ 19-20. After it received counsel's letter in early 2015, Dish alleges that it noted Dotson's request in its system and "wrote off" Dotson's outstanding account balance. See id. ¶¶ 14, 20.

Dish appended to its motion its "account notes" which, according to Montano, "show generally all activity and communications related to Mr. Dotson's account." Dkt. No. 49-3 at 4. These notes reflect that on July 10, 2012, Dotson established service with Dish. See Dkt. No. 49-4 at 7-8. Several months later, Dotson advised Dish that he was dissatisfied with his service and requested that Dish disconnect its equipment, which Dish did in either late 2013 or early 2014. Id. at 5. In March 2014, Dish charged Dotson a prorated cancellation fee pursuant to the Plan Agreement. Id. at 4.[1] Over the next several months, the account notes reflect that the parties disputed the validity of the cancellation fee. See id. at 3-4. In February 2015, the notes show that Dish received the letter from Dotson's attorney requesting Dotson "cease [and] desist contacting his client." Id. at 3. The cancellation fee was listed as being waived on that day and no subsequent contact with Dotson was noted. Id. at 2-3.

_____

[1] The Plan Agreement provides, in pertinent part, that if service is disconnected for any reason prior to the end of the contract term, Dish will automatically charge a cancellation fee to the customer's account or credit card, which the customer agrees to pay. Dkt. No. 49-6 at 2.

On December 31, 2018, Dotson filed the present action in the Magistrate Court of Glynn County, Georgia asserting generally that Dish "violated the Plaintiff's rights under the [TCPA] on multiple occasions." Dkt. No. 1-1 at 3. In February 2019, Dish removed the action to this Court pursuant to federal question jurisdiction under 28 U.S.C. § 1331. In May 2019, Dotson filed an Amended Complaint—with leave from the Court—asserting more specifically that Dish violated the TCPA by making "repeated telephone calls to the Plaintiff's cellular telephone from automatic telephone dialing devices or equipment." Dkt. No. 25 ¶ 3. He further alleges that despite having "made demand upon the Defendant to cease," Dish "continued to make said calls in violation of the [TCPA]." Id. ¶ 4.

In August 2019, following the close of discovery, Dish filed its Motion for Summary Judgment contending that the record evidence cannot support Dotson's claim that Dish violated the TCPA and that Dish is entitled to judgment as a matter of law. Dkt. No. 49. For the reasons discussed below, the Court must GRANT Dish's motion.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party."

FindWhat Investor Group.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332) (Brennan, J. dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id.

at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

As a threshold matter, Dish argues that many of Dotson's claims for unauthorized calls are barred by the relevant statute of limitations. The Court agrees. Under 28 U.S.C. § 1658, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress . . . may not be commenced later than 4 years after the cause of action accrues." The Eleventh Circuit has held that this limitation period applies to alleged violations of the TCPA under 28 U.S.C. § 1658(a). See Coniglio v. Bank of Am., N.A., 638 Fed. Appx. 972, 974 n.1 (11th Cir. 2016). Here, Dotson filed his state action on December 31, 2018. Dkt. No. 1-1. Accordingly, any claims based on calls made prior to December 31, 2014 are barred.

Moreover, irrespective of this time bar, Dotson has not presented any evidence that any of the alleged calls were made using an "Automatic Telephone Dialing System" ("ATDS").[2] Under section (b)(1) of the TCPA, persons are only barred from making

---

[2] Dish also argues that Dotson's claims must fail because he has not raised a genuine dispute about whether the calls were authorized. Because the Court finds that Dotson has presented no evidence that an ATDS was used, the Court need not reach this additional ground for granting summary judgment.

unauthorized calls when those calls are made "using any [ATDS] or an artificial prerecorded voice." 47 U.S.C. § 227(b)(1)(A). An ATDS is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator [and] . . . to dial such numbers." Id. § 227(a)(1). It is the plaintiff's burden to establish that a call was made using an ATDS. See Estrella v. LTD Fin. Servs., LP, No. 8:14-cv-2624, 2015 U.S. Dist. LEXIS 148249, at *9-10 (M.D. Fla. Nov. 2, 2015) (finding that the plaintiff did not satisfy its burden of establishing Defendant used an ATDS or predictive dialing system); see also Musenge v. SmartWay of the Carolinas, LLC, NO. 3:15-cv-153, 2018 U.S. Dist. LEXIS 158044, at *7 (W.D.N.C. Sept. 17, 2018) (placing the burden on the plaintiff to allege use of an ATDS by the defendant); see also San Pedro-Salcedo v. Häagen-Dazs Shoppe Co., No. 5:17-cv-03504, 2019 U.S. Dist. LEXIS 208228, at *15 (N.D. Ca. Dec. 3, 2019) ("[W]hether Häagen-Dazs used an ATDS is an essential element of [the plaintiff's] claim and, as the plaintiff, she carries the ultimate burden of affirmatively proving that Häagen-Dazs used an ATDS.").

Here, Dotson alleges generally in his Amended Complaint that Dish made calls to his cellphone "from automatic telephone dialing devices or equipment." Dkt. No. 25 ¶ 3. Summary judgment must be granted however, because Dotson cannot rest on that mere allegation. He has not produced any evidence that an ATDS was used.

Not every call from a commercial entity is made via ATDS. Dotson

has offered no evidence whatsoever that would substantiate his

claim that Dish used ATDS for the calls made to his cellphone. It

is certainly possible in this case that Dish employees or

contractors could have simply dialed Dotson's number based on

information they had in a file.

In response, Dotson points to one of Dish's answers to his

interrogatories requesting information about individuals who

contacted his number. The interrogatory in question states:

> List and identify each person who contacted the
> Plaintiff cell phone . . . on behalf of the Defendant at
> any time within the last five years, and state the date
> of each call made by each listed person.

Dkt. No. 51-3 at 9. In response Dish stated as follows:

> DISH objects to this Interrogatory on the ground that it
> suggests that DISH has knowledge of a "person who
> contacted" Plaintiff "on behalf" of DISH. DISH also
> objects to answer this Interrogatory on behalf of a
> "person" over which DISH has no control or no first-hand
> knowledge. DISH further objects to this Interrogatory on
> the ground that the temporal scope is outside the statute
> of limitations.

Id.

Dotson argues that because Dish's interrogatory response did

not specifically identify the individuals who made calls to his

cellphone, that Dish effectively conceded that the calls were made

using "automated dialing equipment." See Dkt. No. 51 at 3-4.[3]

---

[3] Dotson similarly argues that Dish did not disclose the individuals who
specifically made calls to Dotson as part of its initial disclosures under Rule
26(a)(1) of the Federal Rules of Civil Procedure.

However, far from providing evidence that an ATDS was used, the response is merely an objection suggesting that Dish may not have control of a person whom Dotson seeks information about. Nothing in the response—which is merely an objection—serves as evidence that an ATDS was utilized. While the Court acknowledges that Dish's objections seem somewhat cryptic,[4] Dotson had ample opportunity to demand a more detailed explanation from Dish through either a Motion to Compel or by conducting depositions of Dish representatives who might shed more light on that issue and lead to actual evidence about the usage or non-usage of ATDS. See, e.g., Dkt. No. 45 (granting, in part, Dotson's motion to extend the Court's deadline to conduct discovery and providing Dotson additional time to conduct depositions of certain Dish representatives). A viable option is not to do nothing other than to urge the Court to imagine what might have happened if a motion to compel was filed and if it succeeded and if it resulted in provision of evidence to submit to a jury. Such triple speculation by the Court is improper and does not create a jury issue. As it

---

[4] Dish appended to its reply brief a supplemental response to Dotson's interrogatory in which it stated:

> You have asked DISH to 'identify each person who contacted the Plaintiff [sic] cell phone." DISH does not know if the requested information exists and, if it does, DISH does not have the requested information in DISH's possession, custody, or control.

Dkt. No. 53-2 at 3. This answer is, perhaps, equally as ambiguous as Dish's original interrogatory response. However, the response still does not concede that Dish relied on some form of automated device to contact Dotson.

stands, the Court finds that Dotson has failed to present evidence sufficient for a reasonable jury to conclude that Dish contacted him using an ATDS.

## CONCLUSION

For these reasons, Dish's Motion for Summary Judgment, dkt. no. 49, is GRANTED. The Clerk of the Court is DIRECTED to close this case.

**SO ORDERED**, this 19th day of March, 2020.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA